# IN THE COURT OF APPEALS OF IOWA

No. 24-0546
Filed June 5, 2024

**IN THE INTEREST OF M.H.,**
**Minor Child,**

**A.H., Mother,**
     Appellant,

**J.H., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Joan M. Black, Judge.

Parents separately appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**

Kristin L. Denniger, Mount Vernon, for appellant mother.

Deborah M. Skelton, Tiffin, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

David R. Fiester, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

In separate appeals from the termination of their parental rights to their third child, a mother and father try to overcome the juvenile law maxim, "What's past is prologue." *In re K.F.*, No. 14-0892, 2014 WL 4635463, at *4 (Iowa Ct. App. Sept. 17, 2014). We agree that past conduct is not always determinative of future conduct. *See In re C.M.*, No. 14-1140, 2015 WL 408187, at *5 (Iowa Ct. App. Jan. 28, 2015). But it is probative, *see id.*, especially when the statutory ground for termination is section 232.116(1)(g) (2024), as it is here. Both parents challenge the sufficiency of evidence supporting that ground for termination, along with the juvenile court's waiver of reasonable efforts, and they argue termination is not in the child's best interests because of their strong bond. We affirm upon our de novo review of the record.

## I.    Background Facts and Proceedings

The parents' past starts with their two older children,[1] who were born in 2020 and 2021. The Iowa Department of Health and Human Services intervened after the second child was born in July 2021. The mother admitted using methamphetamine the day he was born. She tested positive for that substance, as well as marijuana and amphetamines. The child also tested positive for methamphetamine and amphetamines, as did the father. During the department's investigation, the mother left the older child—who was only ten months old—alone and unattended in the mother's room at a homeless shelter.

---

[1] Going back further in time, the father has two other children with different mothers. One of those children was the subject of a child-welfare proceeding that started in August 2019. The father did not participate in that proceeding.

The children were removed from their parents' custody, and the parents were ordered to participate in substance-use evaluations, treatment, and testing.

Despite reunification efforts over the next year, the parents continued to test positive for methamphetamine and other drugs, even though they mostly denied use. They did not complete substance-use treatment and struggled to maintain housing. The only bright spot was the parents' participation in visits. But that wasn't enough for reunification. In July 2022, the juvenile court terminated the parents' rights to both children under Iowa Code section 232.116(1)(h), finding neither had a "safe residence for the children" or "adequately addressed their severe substance abuse problem."

At the time of the earlier termination, the mother was pregnant with the third child, who was born in November 2022. Less than one year later, in September 2023, the family came to the department's attention again for similar issues. The parents were living with the child in a rundown trailer without running water. And there were concerns they were using methamphetamine again. When a child protection worker visited the trailer, it was not habitable and had drug paraphernalia scattered about. The State obtained an ex parte order for temporary removal and filed a child-in-need-of-assistance petition. Both parents showed up at the removal hearing with shaved heads, which the juvenile court found was done to avoid drug testing. Meanwhile, the child's hair tested positive for methamphetamine and amphetamines. The child was adjudicated in need of assistance in early October.

Ten days later, on October 19, the State moved to waive reasonable efforts. *See* Iowa Code § 232.102A(4)(c). The motion was considered at the dispositional

hearing in early December. By the time the juvenile court issued its ruling in January 2024, the parents had tested positive for methamphetamine and other drugs multiple times—most recently a December 27, 2023 sweat test for the father that was positive for methamphetamine and cocaine and a January 3, 2024 sweat test for the mother that was positive for methamphetamine.[2] They had also completed substance-use evaluations. The father's evaluation recommended extended outpatient treatment, while the mother's recommended relapse prevention. The mother, however, was not honest with the evaluator about her drug use, setting her sobriety date in November 2021.

In its combined ruling on disposition and waiver of reasonable efforts, the court granted the State's motion to waive reasonable efforts because the same issues in the prior proceeding—housing instability and ongoing drug use—still existed. The court considered but rejected the parents' argument that "it is too early in the process of the case to waive reasonable efforts" because the parents "continue to deny that they have addiction issues. They deny use completely. They claim to have been drug free since November 2021. It is impossible to guess how long it might take them to address an issue that they do not acknowledge exists." The court accordingly concluded "that clear and convincing evidence exists to believe that the offer or receipt of services would not likely resolve the current situation in a reasonable period of time." *See id.*

---

[2] There were some negative tests interspersed with the positive tests but not with any consistency. And some of those negative tests were urinalyses that did not test for methamphetamine.

Despite the waiver, the State continued to offer some services to the parents, like drug testing and families first services. Although the parents declined the latter services, they completed drug tests on January 15. But after the mother's test was positive for methamphetamine and the father's for marijuana, they stopped participating in drug testing too.

The State filed its termination petition in late January, and a hearing on the petition was held in February. Neither parent had started substance-use treatment by then. The mother had completed a psychiatric evaluation and was taking medicine to treat her attention deficit hyperactivity disorder. But she was not engaged in any other mental-health treatment for her history of depression and post-traumatic stress disorder. The caseworker, who was also involved with the past termination, testified that more time was not "going to be the answer on this case because . . . we've had the same circumstances for the last several years with both of them, and it hasn't changed."

Although the father did not testify at the hearing, the mother did. She told the court that she ended her relationship with the father after reasonable efforts were waived: "I have voiced my opinion to him that I figured it would be in our best options to not continue to be together because when we are together, we use, and I don't see us being able to be sober and getting [the child] back while being together." Yet she maintained that apart from a relapse in March 2023, which landed her in the hospital, she had been sober since November 2021. The mother also testified that she had signed a lease on a new apartment at the beginning of February, and she was employed full-time.

Even so, the juvenile court determined the State met its burden under section 232.116(1)(g), finding clear and convincing evidence that

> the parents continue to lack the ability or willingness to actively participate in services that would correct the situation. They give lip service by saying they have plans, but they have demonstrated over and over again that their actions do not match their stated intentions. It is the conclusion of the Court that an additional period of time will not correct the situation.

The court also determined termination was in the child's best interests and none of the permissive exceptions to termination applied. Both parents appeal.

## II. Analysis

We review terminations of parental rights de novo, applying a three-step analysis that asks whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3).

### A. Ground for termination

Both parents claim the State failed to prove the final two elements of Iowa Code section 232.116(1)(g), that "[t]here is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation" and "an additional period of rehabilitation would not correct the situation." Iowa Code § 232.116(1)(g)(3), (4). Wrapped up in their challenges to this statutory ground are their claims that the State rushed to waive

reasonable efforts under section 232.102A(4)(c).[3] On our de novo review of the record, we find no error in the waiver of reasonable efforts.[4]

Under section 232.102A(4)(c), "the court may waive the requirement for making reasonable efforts" upon "clear and convincing evidence that aggravated circumstances exist," which is shown by a combination of (1) a prior termination "to another child who is a member of the same family" and (2) "clear and convincing evidence to show that the offer or receipt of services would not be likely within a reasonable period of time to correct the conditions which led to the child's removal." The parents do not dispute the prior termination. Instead, the mother contends the waiver was unwarranted because "there was not enough time to determine whether" the second condition was met, while the father simply argues

---

[3] The enactment of section 232.102A took effect on July 1, 2022. *See* 2022 Iowa Acts ch. 1098, § 49. Its predecessor was previously codified at Iowa Code section 232.102(12)(c). In her petition on appeal, the mother references section 232.57, which is similar to section 232.102A. However, section 232.57 falls under subchapter II of chapter 232, which governs delinquency proceedings. Section 232.102A falls under subchapter III, governing child-in-need-of-assistance proceedings.

[4] The State contends that the parents cannot challenge the ruling waiving reasonable efforts because it was a final order appealable as a matter of right that the parents did not appeal. We disagree. *See, e.g.*, *In re A.W.*, No. 04-1468, 2005 WL 67766, at *2 (Iowa Ct. App. Jan. 5, 2005) (characterizing appeal of waiver of reasonable efforts as interlocutory and finding, "the issue of the waiver of reasonable efforts may be reviewed on appeal from any subsequent termination of parental rights order"). While some of our court's cases have considered such challenges immediately appealable when part of a dispositional order, *see, e.g.*, *In re R.B.*, No. 19-0347, 2019 WL 2524104, at *2 (Iowa Ct. App. June 19, 2019), in another one of our cases, the supreme court characterized such an appeal as interlocutory before granting the appeal and transferring it to us, *see In re N.T.J.*, No. 11-2073, 2012 WL 1067075, at *1 n.1 (Iowa Ct. App. Mar. 28, 2012). True, the court's ruling on waiver in this case was combined with its dispositional order, but those severable issues were disposed of in the same order for convenience.

that he "did not receive the full measure of time to work toward reunification that the statutes allow." We reject these arguments.

"Using the past as the best predictor, we agree with the juvenile court's finding of aggravated circumstances." *In re R.B.*, No. 22-1346, 2022 WL 16631199, at *3 (Iowa Ct. App. Nov. 2, 2022). The parents had their rights terminated in a prior proceeding that was plagued by the same problems present in this one. *See In re J.H.*, 952 N.W.2d 157, 167 (Iowa 2020) ("[T]he parents' history of past terminations—especially when those terminations were under similar circumstances—is highly relevant in proving the parents lack the ability or willingness to respond to services." (footnote omitted)). They were once again consistently testing positive for drugs while denying use and failing to take meaningful steps toward sobriety.

Under these circumstances, the presence of aggravating circumstances was supported by clear and convincing evidence.[5] *See, e.g.*, *R.B.*, 2022 WL 16631199, at *3 (affirming waiver where mother's methamphetamine use continued across cases because offer or receipt of services "would not correct the longstanding . . . lack of follow through exhibited by the mother towards addressing her substance abuse problem"); *In re I.W.*, No. 12-1602, 2012 WL 5356192, at *1–2 (Iowa Ct. App. Oct. 31, 2012) (finding aggravated circumstances where parents'

---

[5] We note that when the reasonable-efforts waiver provisions were moved to new section 232.102A, a caveat was added: "Prior services the state provided to the family shall not be considered in making a determination as to whether a waiver of reasonable efforts is appropriate." Iowa Code § 232.102A(5). Neither parent mentioned this provision in the juvenile court or on appeal. In any event, the statute only prevents consideration of prior services, not the parents' prior and current behavior and tendencies like we are considering here.

rights were previously terminated due to substance use and same issues "continued to exist" in subsequent proceeding); *In re D.S.R.*, No. 01-1042, 2002 WL 100668, at *1–2 (Iowa Ct. App. Jan. 28, 2002) (affirming waiver of reasonable efforts at adjudication where parents had history of substance abuse and prior terminations, "both tested positive for illegal drugs on several occasions, [and] both denied any recent drug use"); *cf. In re A.H.*, No. 14-1049, 2014 WL 7339457, at *16 (Iowa Ct. App. Dec. 24, 2014) (disagreeing with juvenile court's waiver of reasonable efforts because "the mother's four-month sobriety at that time, coupled with her job, her home, and lack of safety concerns during her visits with the child clearly show the mother was on track for reunification").

Aside from complaining about the waiver of reasonable efforts, the parents do not otherwise challenge the State's proof. They imply that because reasonable efforts were improperly waived, the State did not show reasonable efforts as part of its ultimate proof that the child could not be safely returned to parental custody. *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (noting section 232.116(1)(g) invokes the reasonable-efforts requirement). But, where the juvenile "court has ordered the requirement waived, the State need not show reasonable efforts." *In re T.G.*, No. 12-1405, 2012 WL 5356135, at *2 (Iowa Ct. App. Oct 31, 2012). Both parents stopped participating in the services the State still offered, and neither identifies what other services would have helped them. *See In re C.E.*, No. 22-1179, 2022 WL 4362094, at *1 (Iowa Ct. App. Sept. 21, 2022) (declining to provide relief on reasonable-efforts claim where parent did "not explain what services she should have received . . . 'or how they would have fostered reunification.'" (citation omitted)).

In any event, based on the record before us, we find the evidence clear and convincing that the parents continued "to lack the ability or willingness to respond to services which would correct the situation" and "an additional period of rehabilitation would not correct the situation." Iowa Code § 232.116(1)(g)(3), (4). The parents' performance in this proceeding mirrors their performance in the prior proceedings, although we commend the mother for obtaining a job and housing. Still, both parents continuously used drugs, refused to acknowledge their use, and took no meaningful steps toward changing that serious issue. *Cf. A.H.*, 2014 WL 7339457, at *20 (reversing termination under section 232.116(1)(g) where the mother "held a full-time job for many months, had maintained a stable and safe residence, had regular visitation with her child, and had maintained mental health and substance abuse treatment" with an extended period of sobriety). The evidence was sufficient for termination under section 232.116(1)(g).

### B.    Best Interests

Both parents argue termination is contrary to the child's best interests. In considering that question, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Neither parent addresses these best-interest factors. Instead, they argue termination is contrary to the child's best interests because of the closeness of the parent-child bonds. "Consideration of the parent-child bond is not a part of our best-interests analysis." *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023). This claim is more properly addressed under

the third step for permissive exceptions, discussed below. *In re L.L.*, No. 24-0431, 2024 WL 2045335, at \*3 (Iowa Ct. App. May 8, 2024).

### C. Statutory Exception

The parents' arguments about their strong bond with the child implicates the permissive exception to termination in section 232.116(3)(c), which authorizes the court to forgo termination when it "would be detrimental to the child . . . due to the closeness of the parent-child relationship." While the mother believes that "irreparable harm will be done to M.H.'s mental health if that bond is now permanently severed," she presented no evidence to support that belief or a conclusion that termination would be detrimental to the child. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception."). And neither did the father. While the record showed a bond between the child and her parents, it was limited given her young age. And a bond is not, by itself, enough to avoid termination. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). We accordingly conclude this exception does not apply.

### III. Conclusion

We affirm the termination of both parents' rights.

**AFFIRMED ON BOTH APPEALS.**